IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| SUHASINI NADESAN, | § | |
| Plaintiff, | § § § | |
| v. | § § | NO. 2:10-CV-239-J |
| TEXAS ONCOLOGY PA, | § § | |
| Defendant. | § § § § § | |

## OPINION AND ORDER

Before the Court is Defendant Texas Oncology, P.A.'s *Motion to Dismiss*, filed on November 3, 2010. Nadesan filed a motion to amend her complaint on November 24, 2010, which was granted on November 30, 2010. This Court will treat the motion to dismiss as directed to the amended complaint. *See Holmes v. Nat'l Football League*, 939 F.Supp. 517, 522 n. 7 (N.D.Tex. 1996) ("Defendants' motion to dismiss pre-dates the filing of plaintiff's first amended complaint. . . . [T]he court may nevertheless treat defendants' motion as directed to the amended complaint because the defects in Holmes' complaint reappear in the amended complaint." (citations omitted)).

Nadesan was employed as a medical oncologist by Texas Oncology starting in 2006. On February 19, 2009, Texas Oncology delivered notice to Nadesan that her employment was being terminated on April 21, 2009. Starting from the date of notice (February 19, 2009), Nadesan was told to vacate Texas Oncology's premises and not return. Nadesan was additionally told not to contact any of Texas Oncology's patients or employees, among certain other restrictions.

1

Nadesan filed a formal charge and complaint with the Equal Employment Opportunity Commission (EEOC) and the Texas Workforce Commission Civil Rights Division on or about January 26, 2010, approximately 341 days after notice of termination, alleging unlawful discrimination. On October 6, 2010, within 90 days of receiving a right-to-sue letter from the EEOC, Nadesan filed an action in this Court. Nadesan asserts causes of action under the Age Discrimination in Employment Act (ADEA), Title VII of the Civil Rights Act, as well as claims for violations of the Texas Labor Code and common law defamation.

Texas Oncology alleges that Nadesan failed to timely file a Charge of Discrimination with the EEOC and her claims of employment discrimination are therefore barred. Texas Oncology argues that Nadesan filed her Charge of Discrimination on or about January 26, 2010, approximately 341 days after the filing period began to run, thus her administrative claims under Title VII, the ADEA, and the Texas Labor Code were untimely.

Nadesan responds that the Intake Questionnaire and attached supplement she submitted to the EEOC on July 10, 2009 (141 days from the date of her termination) constituted a "charge" sufficient to satisfy the requirements of both the ADEA and Title VII. She alleges that since the Intake Questionnaire constituted a charge, and it was filed approximately 141 days after the alleged discriminatory conduct, it also satisfied the 180-day filing limit under the Texas Labor Code.

Alternatively, Nadesan argues that the deadline to file a charge was equitably tolled. She alleges that she sent her Intake Questionnaire to the EEOC on July 10, 2009, and she received back a drafted formal charge to sign on January 20, 2010, approximately 195 days later. She argues that because she timely filed the Intake Questionnaire, and later promptly returned the formal charge to the EEOC, any delay between the filing of her Intake Questionnaire and the

2

filing of a formal charge is attributable to the EEOC. In this regard, Nadesan alleges the EEOC both "mishandled" her Intake Questionnaire and made misleading statements about the timeliness of her complaint.

## STANDARD OF REVIEW

A motion for failure to state a claim under FED. R. CIV. P. 12(b)(6) is to be evaluated on the pleadings alone. *See, e.g., Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986). "To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Cox v. Hilco Receivables, L.L.C.*, --- F.Supp.2d ---, 2010 WL 4781304 at *2 (N.D.Tex. 2010). When matters outside of the pleadings are presented and considered, the motion shall be treated as one for summary judgment and all parties shall be given an opportunity to present any pertinent material. *Id.* at 310; FED. R. CIV. P. 12(d). A motion for summary judgment should be granted if the movant shows that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(a).

A party who moves for summary judgment has the burden of identifying the parts of the pleadings and discovery on file that, together with any affidavits, show the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmovant must set forth specific facts that show a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In determining whether a genuine issue of material fact exists, courts must resolve all ambiguities of fact in favor of the non-moving party. *Id.*

Both Texas Oncology (the movant) and Nadesan have submitted materials and affidavits in support of their positions. Because materials beyond the pleadings and the EEOC filings have

3

been presented by both sides and considered in this opinion, conversion of this motion into one for summary judgment on Nadesan's federal claims is appropriate.

## DISCUSSION

### 1. Is the Intake Questionnaire a "charge" under the ADEA and Title VII?

A plaintiff alleging discrimination under the ADEA must file an administrative charge with the EEOC within 300 days of the alleged discrimination. *Julian v. City of Houston, Tex.*, 314 F.3d 721, 726 (5th Cir. 2002); 29 U.S.C. § 626(d)(1) (2010). A Title VII plaintiff is also required to file a charge of discrimination with the EEOC within 300 days of the alleged discrimination. *See, e.g., Adams v. Cal-Ark Intern., Inc.*, 159 F.Supp.2d 402, 407 (E.D.Tex. 2001); 42 U.S.C. § 2000e-5.

When the alleged discrimination at issue is unlawful termination, the applicable limitations period begins to run from the date an employer makes known that an employee's services are no longer accepted. *See Elliot v. Group Medical & Surgical Service*, 714 F.2d 556, 563 (5th Cir. 1983); *Payne v. Crane Co.*, 560 F.2d 198, 199 (5th Cir. 1977). Nadesan was notified of her termination on February 19, 2009. There is no apparent dispute as to the use of this date as the beginning of the limitations period.

Likewise, there is no dispute as to the approximate date Nadesan's formal Charge of Discrimination was filed with the EEOC – on or about January 26, 2010,[1] approximately 341 days after Nadesan received notice of her termination. Texas Oncology contends that Nadesan's formal charge was therefore time-barred by both the 300- and 180-day time limits imposed by the ADEA and Title VII and the Texas Labor Code, respectively. Nadesan, however, argues that

---

[1] The formal charge form was signed January 26, 2010 and notarized the same day, but is stamped "RECEIVED" by the EEOC on February 1, 2010. Both dates are beyond the 300-day limitations period.

4

an Intake Questionnaire and attached supplement which she submitted to the EEOC on July 10, 2009 – approximately 141 days after her termination – acted as a formal charge for all of her discrimination claims, thus her administrative charge was timely filed with the EEOC.

The ADEA mandates that "[n]o civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the [EEOC]. Such a charge shall be filed . . . within 300 days after the alleged unlawful practice occurred. . . ." 29 U.S.C. § 626(d)(1).

The EEOC's regulations define "charge" as "a statement filed with the Commission by or on behalf of an aggrieved person which alleges that the named prospective defendant has engaged in or is about to engage in actions in violation of the Act . . ." 29 C.F.R. § 1626.3. The charge "shall be in writing." 29 C.F.R. §§ 1626.6.

It should also contain the name, address, and phone number of the both the person making the charge and the person against whom the charge is made, a clear statement of the facts involved (including dates), an approximate number of employees of the employer, and whether state proceedings have been initiated. 29 C.F.R. § 1626.8(a). These inclusions, however, are not mandatory. 29 C.F.R. § 1626.8(b).

Title VII mandates that "charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the [EEOC] requires." 42 U.S.C. § 2000e-5(b). *See also*, 29 C.F.R. § 1601.9 ("A charge shall be in writing and signed and shall be verified.").

EEOC regulations state that a Title VII charge should contain the name, address, and phone number of both the person making the charge and the person against whom the charge is made, a clear statement of the facts involved (including dates), the approximate number of employees of the employer, and a statement disclosing whether state or local proceedings have

5

been initiated. 29 C.F.R. § 1601.12(a). But like the ADEA, these inclusions are not mandatory. 29 C.F.R. § 1601.12(b).[2]

Nadesan relies on the Supreme Court's holding in *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008). *Federal Express* addressed the definition of "charge" under the ADEA and its application to an Intake Questionnaire. In that case, the Court reviewed existing regulations in defining the term, including 29 C.F.R. § 1626.6 ("A charge shall be in writing and shall name the prospective respondent and shall generally allege the discriminatory act(s).") The Court found these requirements – a written allegation of discrimination along with the name of the employer – insufficient, standing alone, to wholly define the meaning of the term "charge" as used in the ADEA.

Instead, the Court adopted the EEOC's proffered definition:

> In addition to the information required by the regulations, i.e., an allegation and the name of the charged party, if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee.

*Federal Express*, 552 U.S. at 402. The Court held that to qualify as a charge, a filing must reasonably "be construed to request agency action and appropriate relief. . ." *Id.* at 404. The Court then examined the Intake Questionnaire at issue to determine whether it fit this definition of a "charge." The Intake Questionnaire contained the information suggested in 29

---

[2] The only significant difference between the requirements of a "charge" under the ADEA and a "charge" under Title VII is the verification requirement. *See Evenson v. Sprint/United Mgmt. Co.*, 2008 WL 4107524 (N.D.Tex. 2008) ("The ADEA, however, has no parallel to § 1601.9, which adds a verification requirement for a Title VII charge." (citations omitted)). "Verified" means that the charge was "sworn to or affirmed before a notary public, designated representative of the Commission . . . or supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. § 1601.3(a). Nadesan signed a statement on the Intake Questionnaire which read: "I DECLARE (CERTIFY, VERIFY OR STATE) UNDER PENALTY OR PERJURY THAT THE FOREGOING IS TRUE AND CORRECT." Nadesan's filing, therefore, satisfies the verification requirement for charges under Title VII. *See Evenson*, 2008 WL 4107524 at *5.

C.F.R. § 1626.8, including both the employee and employer's names, addresses, and phone numbers, an allegation of age discrimination, the number of employees at the facility, and an indication that the employee had not approached another government agency regarding the alleged discrimination. On reviewing this document alone, the Court noted:

> Were the Intake Questionnaire the only document before us we might agree its handwritten statements do not request action . . . [T]he Intake Questionnaire is not labeled a 'Charge of Discrimination' . . . In fact the wording of the questionnaire suggests the opposite: that the form's purpose is to facilitate 'pre-charge filing counseling' and to enable the agency to determine whether it has jurisdiction over 'potential charges.' . . . There might be instances where the indicated discrimination is so clear or pervasive that the agency could infer from the allegations themselves that action is requested and required, but the agency is not required to treat every completed Intake Questionnaire as a charge.

*Id.* at 405 (citations omitted). In so holding, the Court noted that the printed language of the questionnaire "does not give rise to the inference that the employee requests action against the employer." *Id.*

However, in *Federal Express*, the Intake Questionnaire was supplemented with a six-page affidavit wherein the employee "asked the agency to '[p]lease force Federal Express to end their age discrimination plan. . .'" *Id.* The Court held that the combination of the employee's election on the Intake Questionnaire to allow the agency to contact her employer combined with the request "that the agency 'force' the employer to stop discriminating against her were enough to bring the entire filing within the definition of charge . . ." *Id.* at 406.

Nadesan filed an Intake Questionnaire similar to the one examined in *Federal Express*. She included her name, address, and phone number, as well as those of Texas Oncology. She indicated that she had not sought the assistance of any other governmental agency and that she believed discriminatory action had been taken against her on the basis of National Origin, Sex, and Age.

The printed language on Nadesan's questionnaire mirrors that in *Federal Express*, including the advisory that "the Commission has jurisdiction over potential charges . . . and to provide such pre-charge filing as is appropriate." Nadesan's questionnaire also states: "[a]n officer of the EEOC will review the information you provide and determine whether or not your allegations warrant a charge being filed." Because Nadesan's questionnaire contains similar wording to the questionnaire in *Federal Express* and nothing in the printed language suggests that the questionnaire itself is a charge, it likewise "does not give rise to the inference that the employee requests action . . ." *Federal Express*, 552 U.S. at 405.

Nadesan notes that she marked 'Yes' on the questionnaire to a question asking whether she had attempted to resolve her problem by "discussing the matter with someone in management." In addition to selecting the 'Yes' box, she listed three individuals with whom she spoke. Nadesan argues that this constitutes a request for action.

If Nadesan's proper response to a question on the form were a sufficient request for action, every properly completed intake questionnaire would be considered a charge, a conclusion unsupported by *Federal Express*. *Federal Express*, 552 U.S. at 405 ("the agency is not required to treat every completed Intake Questionnaire as a charge"); *see also, Evenson v. Sprint/United Management Co.*, 2008 WL 4107524 at *7 (N.D.Tex. 2008) ("If the court were to deem these filings – individually or collectively – as a charge of discrimination, then, contrary to *Federal Express*, the EEOC would be required to treat virtually every completed intake questionnaire as a charge.").

Attached to the questionnaire, Nadesan included a detailed statement outlining her allegations. Unlike the filing in *Federal Express*, though, Nadesan's supplement does not include any language requesting agency action. Nothing in Nadesan's Intake Questionnaire or

8

attached supplement qualifies as a request that the EEOC take action. Additionally, the language printed on the form does not raise the presumption that the questionnaire itself constitutes a charge. Therefore, Nadesan's Intake Questionnaire is not a charge under either the ADEA or Title VII, and she thus failed to timely submit a charge of discrimination with the EEOC.

**2.     Was the filing deadline equitably tolled?**

In the alternative, Nadesan argues that the limitations period should be equitably tolled. Nadesan contends that she took affirmative efforts to preserve her rights with a timely inquiry (i.e., the questionnaire) and the EEOC waited approximately 195 days before sending her a formal charge of discrimination to complete and return. Nadesan argues that this delay constituted a mishandling of her claim by the EEOC and as such, equities weigh in favor of tolling the limitations period. Nadesan argues that because Texas Oncology had knowledge of Nadesan's claims as of April 9, 2009, it was not prejudiced by any delay in the filing of her charge.

The limitations period for federal discrimination claims is subject to equitable considerations, including equitable tolling. *See, e.g., Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Chappell v. Emco Mach. Works. Co.*, 601 F.2d 1295 (5th Cir. 1979). The burden of proof rests on the party invoking the equitable tolling, and the doctrine is applied sparingly. *Tillison v. Trinity Valley Electric Co-op. Inc.*, 204 Fed.Appx. 346, 348 (5th Cir. 2006). When applying equitable tolling, the focus is on whether the plaintiff acted with reasonable prudence. *See Nazir v. Wal-Mart Stores*, 2009 WL 3735937 (S.D.Tex. 2009). "It is a common maxim that equity is not intended for those who sleep on their rights." *Covey v. Arkansas River Co.*, 865 F.2d 660, 662 (5th Cir. 1989).

Equitable tolling has been held to apply when the plaintiff is "prevented in some extraordinary way from asserting his rights." *Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996). *See also, Crittendon v. American Nat. Ins. Co.*, 967 F.Supp. 933, 942 (S.D.Tex. 1997) ("[E]quitable tolling is not available to claimants who do not file suit in a timely fashion because of factors that were clearly within their control."). "[T]he principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect." *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96 (1990).

In regards to untimely filed EEOC charges, equitable tolling may apply in the following circumstances: when there is a pending action between the parties in the incorrect forum; when the claimant was unaware of facts supporting her claim because the defendant intentionally concealed them; and when the claimant was misled by the EEOC. *Id. See also, Chappell*, 601 F.2d at 1303. These circumstances are not exclusive. *Sayre v. Pharmacy Corp. of America*, 2010 WL 4638597 (S.D. Miss. 2010).

**Misleading Statements**

Equitable tolling may be justified when the claimant has been misled by the EEOC and that misrepresentation causes the claimant to miss the filing deadline. *See Tillison*, 204 Fed.Appx. at 348 ("equitable tolling may be appropriate where the plaintiff's *delayed filing* 'was caused by 'the EEOC's misleading the plaintiff about the nature of her rights.' ' " (emphasis added) (quoting *Ramirez v. City of San Antonio*, 312 F.3d 178 (5th Cir. 2002))).

Here, the only representations made to Nadesan by the EEOC were made after the filing deadline had already passed. Thus, the EEOC could not have affirmatively misled her in such a way as to cause her to miss the filing deadline.

### Mishandling of the Questionnaire

Nadesan argues that the EEOC mishandled her questionnaire and, though she timely pursued her claim, the agency's delay in processing her questionnaire caused any untimely filing of the formal charge.

Nadesan has the burden of showing that she was prevented in some extraordinary way from asserting her rights. *Rashidi*, 96 F.3d at 128. In *Shempert v. Harwick Chemical Corp.*, 151 F.3d 793 (8th Cir. 1998), the court held equitable tolling not to apply where the plaintiff received a formal Charge from the EEOC to sign and return only two days before the deadline expired. The court held that "[t]he situation was never beyond [plaintiff's] control so as to justify tolling the filing deadline" because she waited to file her intake questionnaire until two weeks before the deadline, and she also had the advice of counsel before the filing period expired. *Id.* at 798.

Although Nadesan did not receive a formal charge from the EEOC to sign until on or about January 20, 2010, approximately 195 days after she submitted her Intake Questionnaire, and after the 300-day filing deadline had passed, nothing prevented Nadesan from completing a formal charge and submitting it to the EEOC.

Nadesan had the assistance of counsel before filing the questionnaire. *See Edwards v. Kaiser Aluminum & Chem. Sales, Inc.*, 515 F.2d 1195, 1199 n. 8 (5th Cir. 1975); *Marsteller v. Alex. Brown & Sons, Inc.*, 1995 WL 795679 at *2 (E.D.Va. 1995) ("Moreover, the record reveals that Plaintiff was represented by counsel during the EEOC filing period, a fact that underscores the Court's determination that Plaintiff has failed to establish a sufficient reason for not filing charges with the EEOC in a timely fashion." (footnote omitted) (citations omitted)).

She does not claim that she attempted to contact the EEOC after submitting her questionnaire to check on the status of her case. Nadesan has not shown a diligent pursuit of her

rights sufficient to apply equitable tolling. *See Monheimer v. Nielsen*, 2008 WL 5333808 at *5 (S.D.Ohio 2008). "The situation was never beyond [plaintiff's] control so as to justify tolling the filing deadline," *Shempert*, 151 F.3d at 798, and it was "neither legally nor practically necessary" to wait for the EEOC's response to her questionnaire before filing a formal charge. *Portis*, 2000 WL 726220 at *3.

Nadesan has therefore not met the burden of proving the doctrine of equitable tolling applies to her claims of discrimination under the ADEA and Title VII.

## **CONCLUSION**

This Court hereby **GRANTS** summary judgment in favor of Texas Oncology on Nadesan's claims of discrimination under the ADEA and Title VII for failure to exhaust administrative remedies by not filing a timely charge with the EEOC. Having granted summary judgment on Nadesan's federal claims, this Court hereby **DISMISSES WITHOUT PREJUDICE** her claims under state law, including common law defamation and claims under the Texas Labor Code, pursuant to 28 U.S.C. § 1367(c).

It is SO ORDERED.

Signed this 13th day of January, 2011.

MARY LOU ROBINSON
UNITED STATES DISTRICT JUDGE